IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| DAVID LEE LALACK, ) | |
| ) | Civil No. 04-002-ST |
| Petitioner, ) | |
| ) | |
| v. ) | |
| ) | |
| ROBERT LAMPERT, ) | |
| ) | FINDINGS AND RECOMMENDATION |
| Respondent. ) | |

    Noel Grefenson
    Noel Grefenson P.C.
    Attorney at Law
    1415 Liberty Street South
    Salem, Oregon 97302

        Attorney for Petitioner

    Hardy Myers
    Attorney General
    Douglas Y.S. Park
    Assistant Attorney General
    Department of Justice
    1162 Court Street NE
    Salem, Oregon 97310

        Attorneys for Respondent

STEWART, Magistrate Judge.

Petitioner brings this habeas corpus action pursuant to 28 U.S.C. § 2254. He alleges that his convictions for Sexual Abuse in the First Degree and Unlawful Sexual Penetration in the First Degree violate his constitutional rights to counsel and to effectively confront the witnesses against him. For the reasons which follow, the Petition for Writ of Habeas Corpus (docket #1) should be denied, and judgment should be entered dismissing this case with prejudice.

## BACKGROUND

In 1996, petitioner was living with his girlfriend, Carliene Knieremen, and her five-year old daughter, Brittany. During a visit to the house of Travis Josephson, Brittany's natural father, Brittany told her Josephson's girlfriend, Leah Gunn, that petitioner had sexually abused her. Based on these allegations, on July 25, 1996, petitioner was indicted on charges of Sexual Abuse in the First Degree and two counts of Unlawful Penetration in the First Degree.

Despite an offer of a probationary sentence in exchange for a guilty plea, petitioner elected to proceed to trial where a jury convicted him on all counts. The trial court sentenced petitioner to two consecutive 100-month sentences for the Unlawful Sexual Penetration convictions, and a concurrent 75-month prison term on the Sexual Abuse conviction. Respondent's Exhibit 101.

2 - FINDINGS AND RECOMMENDATION

Petitioner directly appealed his convictions and sentences, but the Oregon Court of Appeals affirmed the trial court without a written opinion, and the Oregon Supreme Court denied review. State v. Lalack, 159 Or. App. 425, 978 P.2d 459, rev. denied, 329 Or. 358, 994 P.2d 125 (1999).

Petitioner next filed for collateral relief in Oregon's post-conviction ("PCR") courts, but the PCR trial court denied relief on all claims. Respondent's Exhibit 119, pp. 21-26; Respondent's Exhibit 120. The Oregon Court of Appeals affirmed the lower court without opinion, and the Oregon Supreme Court denied review. Lalack v. Lampert, 182 Or. App. 384, 52 P.3d 448 (2002); rev. denied, 335 Or. 654, 74 P.3d 1084 (2003).

Petitioner filed this habeas corpus case on January 4, 2005. The Petition for Writ of Habeas Corpus raises four grounds for relief, but petitioner has withdrawn Ground Four. Petitioner's Reply (docket #37), p. 3. Accordingly, the following three claims remain for the court's consideration:

> **Ground One:** The trial court violated [petitioner's] Sixth Amendment right to confrontation during cross-examination of Leah Gunn.
>
> **Facts:** This violation occurred when under Oregon Evidence code Rule 403, the trial court excluded evidence that Leah Gunn claimed her father urinated on her as a child. This evidence was in fact highly probative to impeach Leah Gunn's claim that she had not solicited the child victim to fabricate claims of sexual abuse against defendant. The victim accused defendant of urinating on her, an act considered extremely rare in sexual abuse

3 - FINDINGS AND RECOMMENDATION

| | |
|---|---|
| | cases. Evidence that Leah Gunn had made a claim of personal abuse, identical to the victim's claim of urination, was probative as it allowed a jury to infer that Leah Gunn had in fact influenced the victim's claims against defendant, a theory which was central to his defense of this case. |
| **Ground Two:** | The trial court violated defendant's Sixth Amendment right to confrontation during cross-examination of Leah Gunn. |
| **Facts:** | The trial court erred in excluding evidence that Leah Gunn had raised false claims of sexual abuse against her ex-husband in a child custody dispute. This evidence was relevant to impeach Leah Gunn's credibility with regard to her statement that she did not solicit or cause the victim to make accusations of sexual abuse against defendant. Defendant's state and federal constitutional rights to confront Leah Gunn, through cross-examination on this issue required introduction of this evidence in spite of Oregon Evidence Code Rule 802(2).[1] Exclusion of this evidence constitutes reversible error as exclusion of the evidence likely affected the outcome of the trial. |
| **Ground Three:** | Trial counsel rendered ineffective assistance of counsel in violation of petitioner's Sixth Amendment right to effective representation by counsel as guaranteed under the Fourteenth Amendment to the United States Constitution. |
| **Facts:** | Trial counsel failed to adequately discuss [with] petitioner the risks of conviction, including the maximum possible sentences applicable to the charged offenses when advising petitioner on a probationary plea offer. As a result, petitioner rejected the probationary plea offer and upon conviction received combined sentences of 17 years in prison. |

Petition for Writ of Habeas Corpus (docket #1), pp. 4-5.

---

[1] Petitioner actually intended to reference OEC 608(2).

Respondent asks the court to deny relief on the Petition because Grounds One and Two are procedurally defaulted, and the Oregon state court decisions denying relief on Ground Three are entitled to deference.

## **DISCUSSION**

### I. **Exhaustion and Procedural Default**

#### A. **Standards**

A habeas petitioner must exhaust his claims by fairly presenting them to the state's highest court, either through a direct appeal or collateral proceedings, before a federal court will consider the merits of those claims. Rose v. Lundy, 455 U.S. 509, 519 (1982). "As a general rule, a petitioner satisfies the exhaustion requirement by fairly presenting the federal claim to the appropriate state courts . . . in the manner required by the state courts, thereby 'affording the state courts a meaningful opportunity to consider allegations of legal error.'" Casey v. Moore 386 F.3d 896, 915-916 (9th Cir. 2004) (quoting Vasquez v. Hillery, 474 U.S. 254, 257, (1986)). If a habeas litigant failed to present his claims to the state courts in a procedural context in which the merits of the claims were considered, the claims have not been fairly presented to the state courts and are therefore not eligible for federal habeas corpus review. Castille v. Peoples, 489 U.S. 346, 351 (1989).

A petitioner is deemed to have "procedurally defaulted" his claim if he failed to comply with a state procedural rule, or failed to raise the claim at the state level at all. Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Coleman v. Thompson, 501 U.S. 722, 750 (1991). If a petitioner has procedurally defaulted a claim in state court, a federal court will not review the claim unless the petitioner shows "cause and prejudice" for the failure to present the constitutional issue to the state court, or makes a colorable showing of actual innocence. Gray v. Netherland, 518 U.S. 152, 162 (1996); Sawyer v. Whitley, 505 U.S. 333, 337 (1992); Murray v. Carrier, 477 U.S. 478, 485 (1986).

**B.  Analysis**

Respondent argues that his claims for violation of the Sixth Amendment right to confrontation alleged in Grounds One and Two were not fairly presented to Oregon's courts, and, therefore, are not preserved for federal habeas corpus review. At trial, petitioner made objections were predicated solely on state law. Therefore, respondent asserts that the federal confrontation claims raised by petitioner on direct appeal were not raised in a procedural context in which the merits were actually considered.

At trial, defense counsel sought to cross-examine Leah Gunn regarding several matters, including the following two issues which are relevant to this habeas corpus case: (1) Gunn had suffered sexual abuse as a child where she had been urinated on, a claim

which was arguably similar to the one made by the victim in this case; and (2) an incident where Gunn had allegedly made false allegations against her husband of child abuse in order to terminate his visitation with her children.

The prosecutor objected to the proposed cross-examination on the basis that the testimony to be elicited was not relevant, would be overly prejudicial, would cause the State undue burden, and did not satisfy any acceptable method of introducing character evidence under OEC 404. Trial Transcript, pp. 286-97. The trial judge denied defense counsel the opportunity to elicit this information on the basis that any limited probative value of the testimony was outweighed by the prejudicial effect on the jury. He also excluded the evidence as inadmissible character evidence. Id.

Petitioner concedes that trial counsel failed to object to the exclusion of the impeachment evidence as a violation of the Sixth Amendment Confrontation Clause, instead citing only to the Oregon Evidence Code. Petitioner's Reply (docket #37), p. 15. Petitioner did, however, present Sixth Amendment confrontation claims to the Oregon Court of Appeals and Oregon Supreme Court based on the exclusion of the evidence at issue here. Respondent's Exhibits 103 & 105.

Although respondent argues that petitioner's Sixth Amendment Confrontation Clause claims were not preserved because they were not raised as part of the evidentiary objection at trial, the

7 - FINDINGS AND RECOMMENDATION

objection to the relevance of such evidence raised the same issue as if he had objected based on the Sixth Amendment Confrontation Clause. To apply procedural default in such a circumstance would in effect eliminate habeas review based on the Confrontation Clause of every evidentiary objection made at trial. The Ninth Circuit has not applied procedural default to this specific situation, making this an issue of first impression in this Circuit.

Because petitioner's Confrontation Clause claims fail on their merits, the court declines to decide the difficult exhaustion issue presented in this case. See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state.").

## II. **The Merits**

### A. **Standards**

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's findings of fact are presumed correct, and petitioner

bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Id at 413. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. Id at 410. The state court's application of clearly established law must be objectively unreasonable. Id at 409.

When a state court reaches a decision on the merits but provides no reasoning to support its conclusion, the federal habeas court must conduct an independent review of the record to determine whether the state court clearly erred in its application of Supreme Court law. Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000). In such an instance, although the court independently reviews the

9 - FINDINGS AND RECOMMENDATION

record, it still defers to the state court's ultimate decision. Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

**B.  Analysis**

   **1.  Confrontation Clause: Gunn's History of Sexual Abuse**

Petitioner alleges that the trial judge's decision to exclude evidence regarding Gunn's history of sexual abuse violated his right to confront the witnesses against him.  Specifically, he claims that the abuse Gunn suffered was so similar to that suffered by Brittany, it is likely that Gunn helped Brittany fabricate the events which resulted in petitioner's convictions.

In all criminal prosecutions, the Sixth and Fourteenth Amendments guarantee the accused the right "to be confronted with the witnesses against him."  U.S. Const., Amdt. 6; Lilly v. Virginia, 527 U.S. 116, 123 (1999).  "The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination."  Davis v. Alaska, 415 U.S. 308, 315-16 (1974).

"[A] criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed . . . 'to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness.'"  Delaware v. Van Arsdall, 475 U.S. 673, 680 (1986) (quoting Davis, 415 U.S. at 318).  In evaluating such a claim, this

court is mindful that "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Id at 679.

Brittany reported that as part of the abuse she suffered, petitioner "pee[d]" on her. Trial Transcript, p. 153. Trial counsel sought to cross-examine Gunn regarding her own prior claims of sexual abuse because they included an allegation that she, too, had been urinated upon during her abuse. According to counsel's research, two social workers with 44 years of combined experience had never heard of a situation where a victim of sexual abuse had been urinated on. Id at 291. Counsel therefore concluded that it was highly unlikely that such an occurrence actually transpired in Brittany's case, and theorized that Gunn helped Brittany to develop a false allegation of sexual abuse.

The trial judge made the following ruling on this evidence:

> My response is twofold . . . I believe the SCF worker certainly left the impression that she believed the child was talking about sexual ejaculation and not actually urine coming out of the penis.
>
> Regardless of which one it was or whether it was either one, and assuming your argument to be correct, I

11 - FINDINGS AND RECOMMENDATION

> still find the prejudicial effect of that testimony outweighs the probative value; therefore I maintain my ruling.

Id.

It is apparent from Brittany's own account of the abuse that she was talking about semen, not urine. During an interview with a social worker, Brittany explained that petitioner "plays with his wienie" while abusing her and "[p]ee comes out of his wienie, and it goes all over [her]." Id at 153-54. Gunn's abusive experience was dissimilar from Brittany's. Since petitioner's argument regarding the admissibility of the evidence was predicated on its similarity to the abuse allegedly suffered by Gunn, the trial judge was correct to exclude the evidence of Gunn's abuse.

Moreover, given the broad discretion afforded trial judges in making decisions regarding the admission of evidence and scope of cross-examination, as well as the strict standard of review applied to habeas corpus cases, petitioner has not demonstrated that the trial judge's decision resulted in an unreasonable application of Supreme Court precedent. For these reasons, relief on this claim should be denied.

### 2. **Confrontation Clause: Gunn's Allegedly False Accusations**

At the time Brittany revealed that she had been molested, Josephson and Knieremen were involved in a child custody battle. Petitioner believed that Gunn coached Brittany to fabricate the allegations of abuse in order to assist Josephson with his custody

dispute. He therefore wished to offer the testimony of Gunn's ex-husband that Gunn, in the course of a prior custody dispute over their own children, raised false claims of sexual abuse against him which led to a restraining order. Petitioner reasoned that the jury could have inferred from this testimony that Gunn realized allegations of abuse could be used as powerful tool, and likely coached Brittany to fabricate a story of sexual abuse in order to assist Josephson in his own custody dispute.

The trial judge agreed to give petitioner's attorney "considerable latitude" in questioning Gunn about the relations between Gunn, Kniereman, and petitioner, including the problems which existed between petitioner and Kniereman over custody and visitation. Id at 294. However, he did not find the circumstances of Gunn's restraining order against Josephson to be relevant to petitioner's case. He found the relevance "if any to be quite thin in this case. And certainly the probative value, in my opinion, is not outweighed."[2] Id. The judge also refused to allow detailed inquiry into Gunn's divorce case because it was not relevant, and "may unduly confuse [the jury] to hear about her divorce case in the course of not talking about her children in this case." Id.

While the evidence petitioner sought to introduce had some probative value, it still amounted to an unproven allegation

---

[2] This latter sentence appears to be an error in the record since the trial judge clearly decided that the limited probative value of the evidence was outweighed by its prejudicial value.

13 - FINDINGS AND RECOMMENDATION

stemming from an unrelated incident. The jury would have been forced to decide whether Gunn's husband sexually abused their own children, thus creating a trial within a trial. If there had been strong evidence that Gunn had lied about the sexual abuse of her own children during her custody dispute, the evidence would have been highly relevant to petitioner's case. However, because petitioner sought to simply present the jury with a credibility contest between Gunn and her ex-husband with regard to an unrelated custody battle, the probative value of the evidence was outweighed by its prejudicial impact. Accordingly, the state court decision denying relief on this claim is neither contrary to, nor an unreasonable application of, clearly established federal law.

### 3. Ineffective Assistance of Counsel: Failure to Advise

In Ground Three, petitioner alleges that his trial attorney failed to adequately inform him of the risks he would face at trial, causing him to reject a probationary plea offer. Petitioner asserts that the PCR trial court dismissed this claim without engaging in any legal analysis, and therefore urges this court to conduct an independent review of the record. Although the court does not agree with petitioner's assertion that the PCR trial court did not engage in any legal analysis, it nevertheless conducts an independent review of the record.

The Supreme Court has established a two-part test to determine whether a petitioner has received ineffective assistance of

14 - FINDINGS AND RECOMMENDATION

counsel. First, the petitioner must show that his lawyer's performance fell below an objective standard of reasonableness. Strickland v. Washington, 466 U.S. 668, 686-687 (1984). Due to the difficulties in evaluating counsel's performance, courts must indulge a strong presumption that the conduct falls within the "wide range of reasonable professional assistance." Id at 689.

Second, the petitioner must show that his lawyer's performance prejudiced the defense. The appropriate test for prejudice is whether the defendant can show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id at 694. Where a petitioner has pled guilty, he demonstrates prejudice if he shows that there is a reasonable probability that, but for counsel's errors, he would not have entered such a plea and would have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985). Accordingly, in this case where petitioner claims he was misled into passing on a plea offer, he demonstrates prejudice if he shows that, but for counsel's erroneous advice, he would have insisted on entering a guilty plea.

The PCR trial court made the following findings with respect to this claim:

> My findings are that the petitioner's counsel, Jeffrey Jones, indicated in his affidavit that he discussed the plea offers made by the State at length with petitioner, who was adamant he would not plead guilty asserting innocence, which I would note he still does to this day. He also states he explain[ed] the penalties and sentences

15 - FINDINGS AND RECOMMENDATION

>     which could be imposed on the defendant, both before and
>     after trial. And this is in his affidavit on pages 2 and
>     3. Regarding the possible sentence, the defendant was
>     advised by the State in writing that it was going to seek
>     a two hundred and seventy-five (275) month sentence and
>     that's in the State's sentencing recommendation and
>     memorandum, which is exhibit 108. And the defendant was
>     the subject of a pre-sentence report, which also
>     indicated a possibility of two-hundred and seventy-five
>     (275) months as a --- as the possible maximum sentence
>     under guidelines . . . .

Respondent's Exhibit 119, p. 23.

Petitioner accurately asserts that the prosecutor's sentencing memorandum and the presentence report would not bear on his pretrial rejection of the State's plea offer because both documents were produced after petitioner's trial and conviction. However, it is clear from petitioner's own deposition testimony at his PCR trial that he did not wish to plead guilty. Respondent's Exhibit 115, p. 15. Although petitioner's deposition testimony does not provide an insight into his reasoning behind this decision, his rationale can be gleaned from trial counsel's affidavit:

>     Petitioner was made aware, and always knew that a
> sentence under Ballot Measure 11 awaited if he was
> convicted of any one of the charges. Petitioner was also
> aware of the offer of probation that we received in this
> case almost immediately after the filing of the case. We
> talked about the offer of probation on many occasions.
> My recollection is that petitioner's girlfriend, Ms.
> Knierman was present during most, if not all, of these
> conversations. Petitioner was adamant that he would not
> accept any type of a plea bargain based on the facts:
> 1) he did not commit any type of sexual crime against
> Brittany; and, (2) because of SCF's involvement. After
> these allegations were made known to the Keizer Police
> Department, SCF stepped in and took Brittany and Ms.
> Knierman's other child from her home, and placed them
> with Travis Josephson, the natural father. M[s].

>       Knierman was "standing by her man," and would not agree
> to SCF's directive to move away from petitioner, and thus
> only received a one-hour supervised visit with the
> children, one hour per week at SCF.
>
>       Petitioner was adamant in going to trial to clear
> his name so that the family could be reunited.  The
> merits of the case were discussed with Mr. Lalack and it
> was his adamant position to reject the plea offer and
> take this case to trial.

Respondent's Exhibit 118, pp. 2-3.

It appears from the record that counsel advised petitioner of the potential sentence he faced and discussed the probationary plea offer with him at length.  Petitioner, however, was opposed to any guilty plea because he could only reunite himself with both Knieremen and her daughter if he was found not guilty of the charges.  Because counsel properly advised petitioner regarding the plea offer, the PCR trial court's conclusion that petitioner was not denied his constitutional right to counsel is neither contrary to, nor an unreasonable application of, clearly established federal law.

## **RECOMMENDATION**

For the reasons identified above, the Petition for Writ of Habeas Corpus (docket #1) should be DENIED, and Judgment should be entered DISMISSING this case, with prejudice.

## **SCHEDULING ORDER**

Objections to these Findings and Recommendation(s), if any, are due February 3, 2006.  If no objections are filed, then the

Findings and Recommendation(s) will be referred to a district court judge and go under advisement on that date.

If objections are filed, then the response is due within 10 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation(s) will be referred to a district court judge and go under advisement.

DATED this 13th day of January, 2006.

                              s/    Janice M. Stewart
                              Janice M. Stewart
                              United States Magistrate Judge